1           **IN THE UNITED STATES DISTRICT COURT**
            **EASTERN DISTRICT OF NORTH CAROLINA**
2                    **WESTERN DIVISION**

3

4  **UNITED STATES OF AMERICA,**        )
                                        )
5                                       )
                                        ) **Case No.**
6                                       ) **5:15-CR-00319-FL-1**
                                        )
7  **ERIC MARTIN PEPKE,**               )
                **Defendant.**          )
8  _____

9
                        **ARRAIGNMENT HEARING**
10       **BEFORE MAGISTRATE JUDGE ROBERT B. JONES, JR.**
                  **JANUARY 13, 2016; 11:43 A.M.**
11                  **NEW BERN, NORTH CAROLINA**
   _____
12
   **FOR THE GOVERNMENT:**
13
   Carrie Dean Randa
14 U.S. Attorney's Office
   310 New Bern Avenue, Suite 800
15 Raleigh, North Carolina  27601-1461

16 **FOR THE DEFENDANT:**

17 Joseph L. Ross, II
   Federal Public Defender's Office
18 150 Fayetteville Street, Suite 450
   Raleigh, North Carolina  27601
19

20

21

22         Proceedings recorded by mechanical stenography,
   transcript produced by computer.
23 _____

24              **DAVID J. COLLIER, RMR, CRR**
                FEDERAL OFFICIAL COURT REPORTER
25                   413 MIDDLE STREET
                  NEW BERN, NC  28560

<pre>
 1              P R O C E E D I N G S

 2                 – – – o0o – – –

 3     (Defendant was previously explained his rights in open

 4                   court as follows:

 5                 – – – o0o – – –

 6         THE COURT:  I ask each defendant appearing before
</pre>

the Court this morning to listen carefully to the following
information.  This information will be an important part of
your case and you may be called upon today to make decisions
based on this information.

        You are here because a bill of indictment has been
returned against you by the grand jury or the U.S. Attorney has
filed a criminal information charging you with the violation of
one or more Federal criminal laws.  You have certain rights as
relate to these charges and I'm going to explain those rights
to you.

        As explained to you at your initial appearance, you
have the right to remain silent.  You have the right to be
represented by counsel, and, if necessary, to have the Court
appoint counsel to represent you in your case, including at a
trial.

        You have the right to a trial by jury, and at such a
trial you are presumed to be innocent, you do not have to prove
anything; instead, the burden is upon the Government, through
its attorneys and agents, to prove you guilty by competent

1    evidence and beyond a reasonable doubt.  The method for the
2    Government to do this is to call its witnesses, who would
3    testify under oath in front of you, in front of a jury, and in
4    front of the presiding District Judge.  You, through your
5    lawyer, will then have the right to cross-examine those
6    witnesses and to object to any evidence you deem to be legally
7    improper.  You would also have the right to use the subpoena
8    power of this court to bring to court witnesses who may be
9    favorable to you and to have these witnesses testify under
10   oath.  You also may elect to take the witness stand and testify
11   under oath, but only if you wish to do so.  No one can force
12   you to take the witness stand and testify if you do not want
13   to.  If you choose not to testify, the fact that you do not
14   testify cannot be held against you and the District Judge will
15   instruct the jury accordingly.

16          If you plead guilty to an offense this morning, you
17   will waive your right to a trial by jury and the rights that
18   I've just mentioned other than your right to an attorney.  You
19   also will have to waive your right not to incriminate yourself,
20   because I cannot accept your plea of guilty as to a particular
21   offense or offenses unless you admit in open court your guilt
22   as to that particular offense or offenses.

23          By pleading guilty to a felony offense or being
24   convicted by a jury and adjudicated guilty of a felony offense,
25   whether that is by a bill of indictment or a criminal

information, you may lose certain valuable civil rights, such as the right to possess any kind of firearm, the right to serve on a jury, the right to hold public office and the right to vote.

If you plead guilty or are found guilty at trial, you may be ordered to make restitution in money or services to the victims of your crime, if they are identifiable.  In certain cases you may be required to forfeit property to the United States Government.  If your offense involves fraud, you may be required to provide notice of your conviction to the victims of your crime.

In addition, if you are not a United States citizen your immigration status may be adversely affected and you may be subject to deportation, exclusion or voluntary departure and prevented from obtaining U.S. citizenship.

If you are charged with a sex crime, a conviction may result in substantial future restrictions on where you may live or work and with whom you may associate.  In addition, at the conclusion of any sentence that is imposed you may be subject to civil commitment as a sexually dangerous person.

As required by the law, a special assessment of $100 for each felony offense or count to which you plead guilty or are found guilty at trial will be imposed against you.  This special assessment of $100 per count will be in addition to and on top of any fine that may also be imposed.

You may be given a term of supervised release following any actual term of incarceration that is imposed. Supervised release is similar to what you may know as probation. The term of supervised release in each individual case can range anywhere from one year up to life, based upon your individual criminal history and the offense. Supervised release would require you to report to your assigned probation officer from time to time and to comply with any Court-imposed or directed instructions. If you violate supervised release conditions, you may be required to serve an additional time of incarceration.

The United States Sentencing Commission has established advisory guideline ranges for all Federal crimes. Although the District Judge is no longer required to specifically follow the guidelines in sentencing you, he or she is required to calculate the advisory guidelines for your offense or offenses. The District Judge will then consider that guideline range as well as other relevant factors set forth in 18 U.S. Code Section 3553(a) before imposing a sentence.

The District Judge has the authority in some circumstances to depart upward or downward from that advisory guideline range, and the District Judge will also examine other statutory sentencing factors under 18 U.S. Code Section 3553(a) that may result in a sentence that is either greater or lesser

than the advisory guideline sentence.  If the District Judge imposes a sentence outside the guideline range, he or she is required to explain on the record at the time of sentencing his or her reasons for imposing a sentence outside the guidelines.

Under some circumstances you may have the right to appeal your sentence even though you pled guilty to the underlying crime.  However, if you have waived the right to appeal your sentence in a plea agreement with the United States, that agreement may be binding upon you.

You need to understand that parole has been abolished in the United States Court system, so if you receive a sentence which includes an active term of incarceration, you will not receive parole.

Regarding plea agreements, you should know that the Court is not a party to a plea agreement and does not participate in the plea agreement negotiations.  However, the Court is obligated to examine carefully any plea agreement with the Government to ensure that the agreement conforms to the objectives of sentencing.  The standards of acceptance of plea agreements include those stated in Rule 11 of the Federal Rules of Criminal Procedure, which provides in part as follows:

In one type of a plea agreement the Government recommends or agrees not to oppose the defendant's request that a particular sentence or sentencing range is appropriate, or that a particular provision of the sentencing guidelines or

policy statement or sentencing factor does or does not apply. To the extent that a plea agreement is of this type, if the Court accepts the agreement, the recommendation or request is not binding on the Court.  If the Court does not follow the recommendation or request, the defendant has no right to withdraw his or her guilty plea.

On the other hand, there may be plea agreements in which the Government agrees not to bring or will move to dismiss other charges or in which the Government agrees that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the guidelines or policy statement or sentencing factor does or does not apply.  To the extent that a plea agreement is of this type, if the Court accepts the agreement, then such agreed-upon terms are binding on the Court and the agreed-upon disposition will be included in the judgment unless the plea agreement provides otherwise.  If the Court does not accept this type of a plea agreement, where there is a binding agreed-upon disposition, the defendant will be given an opportunity to withdraw his or her plea.  If the plea is not withdrawn, the Court is not required to follow the plea agreement and may dispose of the case less favorably than the plea agreement had contemplated.

A written presentence report will be prepared by the probation office to assist the District Judge in sentencing.

1    You will be asked to give information for this report and you

2    are entitled to have your attorney present during the

3    interview.  It is important that the presentence report be

4    accurate because it will likely determine your punishment

5    range.  After that report has been prepared you and your

6    attorney will have an opportunity to review the report and to

7    object to any aspects of the report you believe are inaccurate.

8    Any objections to the presentence report must be made in

9    writing and on a timely basis.  If you do not contest the facts

10   set forth in the presentence report and the Court's independent

11   findings coincide with those facts, those facts will be

12   accepted by the Court as correct and will be relied upon in

13   determining the guidelines applicable to your case.

14        If a party seeks to advocate for a sentence which

15   varies from the sentencing guidelines, that party shall file a

16   written memorandum advocating that position and serve a

17   courtesy copy on the probation officer who authored the

18   presentence report.

19        At the time of sentencing you and your attorney will

20   be afforded an opportunity to speak to the Court and argue for

21   a sentence that you and your attorney feel is appropriate under

22   18 U.S. Code Section 3553(a).  Judge Flanagan does not permit

23   oral testimony in the nature of character evidence at the

24   sentencing hearing, but in lieu thereof she will be happy to

25   receive from your attorney written sentencing memoranda or

character letters, which should be furnished to Judge Flanagan
so that they are received at least one week, seven days, prior
to the date you're scheduled to be sentenced.

Finally, if there are any victims of the offenses for
which you are to be sentenced, these victims will be given an
opportunity to be heard at that sentencing hearing.

That concludes the explanation of your rights.  Those
cases in which a plea of guilty is entered today will be
scheduled for a sentencing hearing to be held no sooner than
90 days from today before Judge Flanagan, and it is anticipated
that those cases will be set for the April, 2016 term of court.
Any case in which a plea of not guilty is entered today will
have an administrative conference call with Judge Flanagan, and
in those cases counsel is directed to contact the Court at
252-638-7507 to schedule that conference and to obtain the
necessary dial-in instructions for participation in that
conference.

Okay.  Each defendant appearing today should know
that as I take up your case to hear your plea and to address
you personally, that you will be placed under oath, and that if
you should answer any of my questions falsely, that your
answers may later be used against you in a separate prosecution
for perjury or making a false statement.

For those Assistant U.S. Attorneys who are here today
in the cases going forward, are there any victims of the

1  offenses in these cases, has the Government fulfilled its duty
2  to notify the victims of this hearing and their right to
3  attend, and whether any victims wish to be heard this morning.
4       MS. RANDA:  Your Honor, in the cases that do involve
5  victims, they have all been notified and no victims have chosen
6  to be present this morning.
7       THE COURT:  Okay.  Thank you.  We will now take the
8  cases up individually.
9                   – – – o0o – – –
10      THE CLERK:  The Court calls the following case for
11 arraignment:  United States of America versus Eric Martin
12 Pepke, Court File Number 5:15-CR-319-FL, Defendant 1.
13      Mr. Pepke, if you would stand, please, I will put you
14 under oath.  If you'd raise your right hand.
15      Do you affirm under the pains and penalties of
16 perjury that the answers you are about to give to the Court are
17 true to the best of your knowledge and understanding?
18      THE DEFENDANT:  I do.
19      THE COURT:  Mr. Pepke, sir, I have in my hands here a
20 document entitled Consent to Proceed Before a Magistrate Judge
21 in your case.  It appears to be signed by you as well as
22 Mr. Ross, your attorney in this case.
23      Mr. Pepke, sir, did you sign this document?
24      THE DEFENDANT:  I did, Your Honor.
25      THE COURT:  And is it your knowing and voluntary

desire that for the purpose of conducting your arraignment and taking your plea this morning, that these proceedings may be conducted before me as a U.S. Magistrate Judge?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Thank you.

All right. Mr. Pepke, you understand that you are now under oath and that if you should answer any of my questions falsely, that your answers may later be used against you in a separate prosecution for perjury or making a false statement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Pepke, sir, what is your full name?

THE DEFENDANT: Eric Martin Pepke.

THE COURT: And how old are you?

THE DEFENDANT: 54.

THE COURT: And how far did you go in school?

THE DEFENDANT: Bachelor's degree in mathematics, certificate in teaching English as a foreign language, and some graduate school.

THE COURT: Okay. Are you able to speak and understand English?

THE DEFENDANT: Yes, I am.

THE COURT: Are you able to read?

THE DEFENDANT: Yes, I am.

THE COURT: Are you currently or have you recently

1    been under the care of a physician or psychiatrist or been

2    hospitalized or treated for narcotics addiction?

3              THE DEFENDANT:  Yes, I have.

4              THE COURT:  Could you tell me a little bit about

5    that.

6              THE DEFENDANT:  Sure.  When I arrived at Wake County

7    Detention Facility after having been arrested, I was unable to

8    sleep.  I did a sick call and was sent to the psychiatrist.

9    I explained that I had been diagnosed as bipolar in 1993 and

10   that I had been wildly -- I think I used the expression

11   floridly manic for many months and was unable to sleep.  They

12   tried me on Haldol, which did not work; then they tried me on

13   Thorazine, which not only did not work but dangerously lowered

14   my blood pressure.  Finally they put me on Trazodone.  The

15   Trazodone was dis -- helped me sleep a little bit and it also

16   took care of the mania.  The Trazodone was discontinued when I

17   was at the Franklin County facility, and my mania is in the

18   process of returning, it is significantly returned.

19              I am also diabetic and require twice daily insulin

20   injections, which I had been getting throughout the entire

21   period of my incarceration except for the past couple of weeks,

22   but now they've started me on the insulin again.

23              THE COURT:  Okay.  Have you taken -- what have you

24   taken in the way of drugs, medicine, pills or any beverages in

25   the past 24 hours?

1          THE DEFENDANT:  Just the insulin.

2          THE COURT:  All right.  Is there anything about your

3    past diagnoses, current condition, prior medications, current

4    medications or current conditions that would make you believe

5    you're unable to understand what's going on this morning?

6          THE DEFENDANT:  I do not believe there's anything

7    that makes me unable to understand this morning.  There are

8    things that make me unable to understand at various other

9    times, and also, Your Honor, I face the problem of if I can't

10   understand, it's very difficult for me to tell.

11         THE COURT:  Well, that kind of puts me in an awkward

12   position.

13         THE DEFENDANT:  I know, Your Honor.

14         THE COURT:  How am I supposed to know that you know

15   what's going on this morning?

16         THE DEFENDANT:  All I can say is that I believe I do.

17         THE COURT:  Okay.  Mr. Ross, do you have any

18   reservations about going forward this morning?

19         MR. ROSS:  I do not and cannot add anything else.

20         THE COURT:  All right.  Well, Mr. Pepke, let me ask

21   you this:  Do you think that if I ask you directly whether you

22   understand what's going on this morning, do you believe that

23   you could give me an honest and accurate answer?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Okay.  Now, Mr. Pepke, have you been

1  provided with a copy of the charges against you in this case?

2            THE DEFENDANT:  I was shown a copy at my original

3  Federal appearance.

4            THE COURT:  Okay.  And having --

5            THE DEFENDANT:  I do not have a copy currently.

6            THE COURT:  Okay.  Have you discussed those

7  charges --

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  -- as well as your case with Mr. Ross?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  And do you understand the charges against

12  you in this case?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  And do you understand what's happening

15  this morning?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  Mr. Ross, any difficulty in communicating

18  with Mr. Pepke, or do you have any reason to doubt his mental

19  competency?

20           MR. ROSS:  No, Your Honor.

21           THE COURT:  Does the United States have any reason to

22  doubt Mr. Pepke's mental competency?

23           MS. RANDA:  No, Your Honor.

24           THE COURT:  All right.  I find that the defendant,

25  Eric Martin Pepke, is competent to appear, to understand the

1 nature of these proceedings and to ultimately plead in these

2 matters.

3        Now, Mr. Pepke, have you had the time to and have you

4 in fact discussed your case with Mr. Ross?

5        THE DEFENDANT:  Yes, Your Honor.

6        THE COURT:  Are you satisfied with his advice and

7 counsel to you in this case?

8        THE DEFENDANT:  Yes, Your Honor.

9        THE COURT:  Did you hear and understand my

10 explanation of your rights this morning?

11        THE DEFENDANT:  Yes, Your Honor.

12        THE COURT:  Did you understand my general explanation

13 of how you might be sentenced?

14        THE DEFENDANT:  Yes, Your Honor.

15        THE COURT:  Did you receive a copy of the indictment

16 in this case charging you with 11 counts?

17        THE DEFENDANT:  I was shown a copy, yes, Your Honor.

18        THE COURT:  Okay.  And do you understand what you're

19 charged with?

20        THE DEFENDANT:  Yes, Your Honor.

21        THE COURT:  All right.  Mr. Ross, do you have a copy

22 of the indictment?

23        MR. ROSS:  I do.

24        THE COURT:  Okay.  If you would provide that to

25 Mr. Pepke.

1          Mr. Pepke, do you want me to read the indictment

2     aloud, or do you waive the reading of it?

3          THE DEFENDANT:  I waive the reading, Your Honor.

4          THE COURT:  Okay.  Do you have a copy there at

5     counsel table, Mr. Pepke?

6          MR. ROSS:  We do.

7          THE COURT:  Okay.  Mr. Pepke, I am required to remind

8     you of any maximum possible penalty, not the guidelines but any

9     maximum possible penalty for each count that you face,

10     including any mandatory minimum penalty.

11          Could the Government please advise Mr. Pepke as to

12     that information.

13          MS. RANDA:  Yes, Your Honor.

14          As to Counts 1 through 10, charging receipt of child

15     pornography, the penalty is not less than five years, not more

16     than 20 years imprisonment, a fine not to exceed $250,000, not

17     less than five years but up to life of supervised release, up

18     to life imprisonment upon revocation of supervised release, a

19     $100 special assessment and restitution if required.  However,

20     if the defendant does have a prior conviction, either State or

21     Federal, relating to aggravated sexual abuse or child

22     pornography, the term of imprisonment increases to not less

23     than 15 years but not more than 40 years, a fine not to exceed

24     $250,000, not less than five years but up to life of supervised

25     release, up to life imprisonment upon revocation of supervised

1  release, a $100 special assessment and restitution if required.

2         As to Count 11, charging possession of child

3  pornography, the penalty is up to ten years imprisonment, but

4  if any image of child pornography involved in the offense

5  involves a prepubescent minor or a minor who had not attained

6  12 years of age, the term of imprisonment should be for not

7  more than 20 years, a fine not to exceed $250,000, not less

8  than five years but up to life of supervised release, up to

9  life imprisonment upon revocation of supervised release, a

10 $100 special assessment and restitution if required.

11        Again, if the defendant is found to have a prior

12 conviction, either State or Federal, relating to aggravated

13 sexual abuse, abusive conduct or child pornography, the penalty

14 is not less than ten years, not more than 20 years

15 imprisonment, a fine not to exceed $250,000, life of supervised

16 release, up to life imprisonment upon revocation of supervised

17 release, a $100 special assessment and restitution.

18        THE COURT:  All right.  Mr. Pepke, sir, do you

19 understand the charges that have been filed against you in this

20 case as well as the maximum punishment you face if convicted of

21 those charges?

22        THE DEFENDANT:  Yes, Your Honor.

23        THE COURT:  All right.  Now, Mr. Ross, there's a

24 plea agreement in this case; is that right?

25        MR. ROSS:  That is correct.

1          THE COURT:  And were all formal plea offers by the

2     Government conveyed to Mr. Pepke?

3          MR. ROSS:  Yes, Your Honor.

4          THE COURT:  Now, and it's his intention to plead

5     guilty to Count 6; is that right?

6          MR. ROSS:  That is correct.

7          THE COURT:  Mr. Pepke, I've been provided an eight

8     page document in your case, this document is entitled

9     Memorandum of Plea Agreement, it appears to be signed by you

10    and Mr. Ross, your attorney, and it appears to indicate that it

11    is your intention to plead guilty to Count 6 of the indictment

12    in this case.

13          Now, Mr. Pepke, sir, is that your intention this

14    morning, to plead guilty to Count 6?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  All right.  And you did sign this

17    document?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  All right.  Have you had, Mr. Pepke,

20    an opportunity to read and to discuss this plea agreement with

21    your attorney and did you in fact do so before you signed it?

22          THE DEFENDANT:  I have, Your Honor.

23          THE COURT:  Does the plea agreement represent in its

24    entirety any and all agreements that you have with the

25    United States and the U.S. Attorney?

1          THE DEFENDANT:  It does, Your Honor.

2          THE COURT:  Did you understand the terms, the

3    language, the words, the sentences, even any legal phrases that

4    are used in this plea agreement after you discussed it with

5    Mr. Ross?

6          THE DEFENDANT:  I did, Your Honor.

7          THE COURT:  Do you understand that by entering into

8    this plea agreement and entering a plea of guilty, that you

9    will have waived or given up your right to appeal or to

10   collaterally attack all or a part of your sentence?

11         THE DEFENDANT:  I understand something like that, but

12   not quite that.  I understand that I give up my right to appeal

13   if it's -- unless it's greater than the guidelines.

14         THE COURT:  Well, there's a paragraph on -- do you

15   have a copy of the plea agreement there at counsel table?

16         THE DEFENDANT:  Okay.

17         THE COURT:  Do you see on page 1 and on page 2,

18   paragraph C, that it goes over from page 1 to page 2?

19         THE DEFENDANT:  I understand, Your Honor.

20         THE COURT:  Do you understand the contents of that

21   paragraph?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  Okay.  Has anyone made any other or

24   different promises to you, Mr. Pepke, to get you to plead

25   guilty in this case other than what is contained in the

1 plea agreement?

2        THE DEFENDANT: No, Your Honor.

3        THE COURT: Has anyone threatened you in any way to

4 persuade you to either accept this plea agreement or to plead

5 guilty in this case?

6        THE DEFENDANT: No, Your Honor.

7        THE COURT: Now, Mr. Pepke, sir, are you pleading

8 guilty of your own free will because are you in fact guilty?

9        THE DEFENDANT: Yes, Your Honor.

10        THE COURT: Do you understand that the offense to

11 which you are pleading guilty is a felony offense and that if

12 your plea is accepted, you will be found guilty of that offense

13 and that that may deprive you of valuable civil rights, such as

14 the right to vote, the right to hold public office, to serve on

15 a jury and possess a firearm?

16        THE DEFENDANT: Yes, Your Honor.

17        THE COURT: Do you understand that if you are not a

18 United States citizen, that in addition to other possible

19 penalties that you face, a plea of guilty may subject you to

20 deportation, exclusion or voluntary departure and prevent you

21 from obtaining U.S. citizenship?

22        THE DEFENDANT: Yes, Your Honor.

23        THE COURT: Do you understand that if I accept your

24 plea of guilty this morning, that you may not be able to

25 withdraw your plea and have a trial in this case?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Have you answered all of my questions

3    truthfully?

4          THE DEFENDANT:  Yes, sir, Your Honor.

5          THE COURT:  Do you need any more time to think about

6    your plea or to discuss your case with Mr. Ross before entering

7    a plea?

8          THE DEFENDANT:  No, Your Honor.

9          THE COURT:  All right.  Mr. Pepke, how do you plead

10   to Count 6 of the indictment?

11         THE DEFENDANT:  Guilty, Your Honor.

12         THE COURT:  All right.  And, Mr. Pepke, I'm going to

13   read through Count 6.  You've got a copy of the indictment

14   there at counsel table.  The chart for Counts 1 through 10 is

15   provided there, and my reading will make reference to Count 6

16   as that's described.  I want you to follow along.

17         Now, Mr. Pepke, did you, beginning at a time ending

18   on or about April 23, 2015, in the Eastern District of North

19   Carolina, knowingly receive visual depictions as described in

20   Count 6 of the indictment, that is digital and computer images

21   in files that had been mailed, shipped and transported in

22   interstate and foreign commerce by any means, including by

23   computer; the productions of the visual depictions involved the

24   use of a minor engaging in sexually explicit conduct and were

25   depictions of such conduct, in violation of 18 U.S. Code

1  Section 2252(a)(2)?  Did you do all that?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  All right.  Could the Government please

4  provide the Court a factual basis supportive of Mr. Pepke's

5  plea of guilty to Count 6, telling the Court what the

6  Government believes it could prove at a trial in this case.

7          MS. RANDA:  Yes, Your Honor.

8          Had this case proceeded to trial, the evidence would

9  show that between March 18, 2015 and April 14, 2015, a computer

10 at a specific IP address was located online by undercover

11 agents and appeared to be offering to distribute child

12 pornography via a peer-to-peer internet web sharing site.

13 Specifically, this IP address appeared to be offering 63 unique

14 files of known or suspected child pornography through the

15 peer-to-peer site known as eDonkey.

16         Detective Kevin West of the Cary Police Department

17 was able to take that IP address and connect directly to the

18 suspect computer and successfully download 19 complete video

19 and photo files of apparent child pornography.

20         A court order was issued to Time Warner Cable for

21 subscriber information at that specific IP address for those

22 dates, and they came back to an apartment leased to an

23 Angela Jones in Garner, North Carolina, which is in the Eastern

24 District.  A search warrant was executed on April 23rd, 2015 by

25 Detective West and other officers from the Garner Police

Department, and they found the defendant, Mr. Pepke, at the
residence.  He was in fact alone when the search warrant was
executed at the beginning.  He did have computers with him in
the living room and other items of digital media devices were
located throughout the apartment, and Detective West checked
the router at the residence and it did in fact match the
IP address where he previously downloaded child pornography.
The wifi connection was also password protected, so no one
could use it if they did not have that password.

After conducting that search and seizing various
items, Mr. Pepke did agree to come to the Garner Police
Department and speak with law enforcement.  He did indicate
that he used eDonkey, the peer-to-peer file sharing network, to
download adult videos as well as child pornography.  He
indicated to agents that they'd find most of the child
pornography he had downloaded on a SIM drive or SD card that he
kept separate and apart from the computer.  He indicated where
that could be found in the kitchen of the residence.

He further advised that he searched for various terms
associated with child pornography, including PTHC, which stands
for "preteen hard core," and various other terms used to locate
child pornography, and that he saved it on that SIM card.

The detectives -- Detective West with Cary P.D.
conducted a forensic analysis on the digital devices seized
from Mr. Pepke and were able to locate over 3,000 unique files

1   of child pornography involving children under the age of 18

2   engaged in sexually explicit conduct.  Some of these files also

3   involved sadomasochistic conduct, including things like

4   bondage.  They also were able to locate the peer-to-peer file

5   sharing network known as eDonkey on Mr. Pepke's computer.

6           Specifically as to Count 6, forensic analysis showed

7   that that particular image of child pornography was downloaded

8   and received on Mr. Pepke's computer on January 12th, 2015, and

9   some of the victims in this case have been identified as known

10  victims of child pornography by the National Center for Missing

11  and Exploited Children.

12          That would be the factual basis.

13          THE COURT:  Mr. Ross, do you care to respond to the

14  Government's proffer?

15          MR. ROSS:  No, your Honor.

16          THE COURT:  Mr. Pepke, did you hear and understand

17  the information the prosecutor has described to the Court

18  regarding the criminal conduct in this case?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  And do you dispute any of that

21  information?

22          THE DEFENDANT:  I dispute the -- one piece, which is

23  not very important.

24          THE COURT:  I'm sorry.  What do you --

25          THE DEFENDANT:  Nowhere near all the 3,000 were child

pornography, but enough of them were.

THE COURT: As relates to Count 6 --

THE DEFENDANT: There were more than 600.

THE COURT: As relates to Count 6, do you dispute what she told me?

THE DEFENDANT: No, Your Honor.

THE COURT: Now, have you heard everything that I've told you this morning?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you feel like you understand everything I've said?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you answered all my questions truthfully?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Very good.

The Court is satisfied with the responses given during this hearing and makes the following finding: It is the finding of this Court in the case of U.S.A. versus Eric Martin Pepke, Case 5:15-CR-319, that Mr. Pepke is fully competent and capable of entering an informed plea, that his plea of guilty to Count 6 is being made knowingly and voluntarily, it is supported by an independent factual basis containing each of the essential elements of the offense charged therein, Mr. Pepke's plea of guilty to Count 6 is therefore accepted and

1  he is hereby adjudged guilty of Count 6.

2          The Court hereby conditionally approves the

3  Memorandum of Plea Agreement the parties have reached in this

4  case.

5          The parties will be notified in writing of the date

6  and the place of sentencing in this matter.  As I've said

7  before, it is anticipated that the sentencing in this case will

8  be at the Court's April, 2016 term, and defense counsel is

9  directed to contact Probation before leaving the court today to

10  arrange the time to commence preparation of the PSR in this

11  case.

12          Is there anything further regarding Mr. Pepke's

13  matters?

14          MS. RANDA:  Not for the Government, Your Honor.

15          MR. ROSS:  No, Your Honor.

16          THE COURT:  All right.  Thank you very much.

17                    - - - - -

18          (Proceedings concluded at 12:03 p.m.)

19                    - - - - -

20

21

22

23

24

25

1               C E R T I F I C A T E

2

3          This is to certify that the foregoing transcript of

4    proceedings taken in an arraignment hearing in the United

5    States District Court is a true and accurate transcript of the

6    proceedings taken by me in machine shorthand and transcribed by

7    computer under my supervision, this the 18th day of July, 2016.

8

9

10                                   /S/ DAVID J. COLLIER

11

12                                   DAVID J. COLLIER

13                                   OFFICIAL COURT REPORTER

14

15

16

17

18

19

20

21

22

23

24

25