1          **IN THE UNITED STATES DISTRICT COURT**
           **EASTERN DISTRICT OF NORTH CAROLINA**
2                     **WESTERN DIVISION**

3

4  **UNITED STATES OF AMERICA,**        )
                                        )
5                                       )
                                        ) **Case No.**
6                                       ) **5:15-CR-00319-FL-1**
                                        )
7  **ERIC MARTIN PEPKE,**               )
                   **Defendant.**       )
8  _____

9

                       **SENTENCING HEARING**
10     **BEFORE DISTRICT JUDGE LOUISE WOOD FLANAGAN**
                  **MAY 4, 2016; 1:31 P.M.**
11                **NEW BERN, NORTH CAROLINA**

12 _____

   **FOR THE GOVERNMENT:**
13
   Carrie Dean Randa
14 U.S. Attorney's Office
   310 New Bern Avenue, Suite 800
15 Raleigh, North Carolina  27601-1461

16 **FOR THE DEFENDANT:**

17 Joseph L. Ross, II
   Federal Public Defender's Office
18 150 Fayetteville Street, Suite 450
   Raleigh, North Carolina  27601
19

20

21

22          Proceedings recorded by mechanical stenography,
   transcript produced by computer.
23 _____

24              **DAVID J. COLLIER, RMR, CRR**
               FEDERAL OFFICIAL COURT REPORTER
25                   413 MIDDLE STREET
                   NEW BERN, NC  28560

```
 1                    P R O C E E D I N G S
 2                      - - - o0o - - -
 3              THE COURT:  Mr. Pepke, this is the time the Court has
 4     set aside to sentence you for receipt of child pornography.
 5     Have you reviewed the presentence report?
 6              THE DEFENDANT:  Excuse me, Your Honor?
 7              THE COURT:  Have you reviewed the presentence report?
 8              THE DEFENDANT:  Yes, I have, Your Honor.
 9              THE COURT:  Have you had enough time to talk to
10     Mr. Ross to be ready for sentencing?
11              THE DEFENDANT:  Yes, Your Honor.
12              THE COURT:  Very good.
13              Counsel for the Government, with respect to the
14     offense conduct outlined in the presentence report, what
15     particularly would you draw the Court's attention to in
16     fashioning a sentence that's sufficient but not greater than
17     necessary?
18              And you can be seated.
19              THE DEFENDANT:  Could you repeat that?  I have a
20     cold.  I'm having a hard time --
21              THE COURT:  We'll make an assisted listening device
22     available for you.
23              THE DEFENDANT:  That would be great.
24              Oh, that's better.
25              THE COURT:  Good.
```

1          And what would you draw the Court's attention to?

2          MS. RANDA:  Yes, Your Honor.  Thank you.

3          The Government would draw your attention first,

4 Your Honor, to paragraphs 7, 8 and 9 of the presentence report,

5 actually 6, 7, 8 and 9.  I'd like to point out, Your Honor, the

6 statements made by the defendant in regards to his downloading

7 and receipt of child pornography.

8          The defendant, as you'll see in paragraph 7,

9 indicated that the reason for downloading child pornography was

10 that he wanted to do something evil and that he thought this

11 was the most evil thing he could come up with, and in essence

12 felt that he needed to punish society or punish other

13 individuals because he felt like he was down on his luck and

14 had received some unfair treatment, and so his decision to

15 download child pornography apparently began as an attempt to

16 get back at society, and for some reason he chose children to

17 do that with.

18          You'll also see in paragraph 6 it seems that the

19 defendant didn't really take seriously some of this behavior.

20 When agents arrived to conduct a search warrant at his house,

21 his girlfriend at the time showed up with a child she was

22 babysitting, and the defendant made a statement, "I bet you

23 think she brought that child home as a present for me."

24 And so I think the defendant didn't really take his actions

25 seriously in this case.

1    As Your Honor will see from the indictment, the

2 defendant began downloading child pornography in at least

3 2002 up until about probably a few days before the search

4 warrant was executed, so he downloaded this child pornography

5 for many, many years.

6    As you'll see in paragraphs 8 and 9, the total count

7 of images was over 21,000. He had 2,912 still images of child

8 pornography, 280 videos, which equates to over 23,912 images of

9 child pornography over that time frame, and these images

10 involved very young children, toddlers and infants, it involved

11 sadomasochistic conduct, so when the defendant makes the

12 statement that he wants to do something evil, he certainly

13 found an outlet for the evil he wanted to do.

14    He was using peer-to-peer file sharing software to

15 download this pornography, and by default that software was

16 sharing pornography with others, and while we have agreed not

17 to do an enhancement for distribution in this case because I

18 had to show there was knowing, he still was allowing other

19 people to get that child pornography from his program, and

20 I think that's important as well.

21    I'll point out to Your Honor in paragraph 13 there

22 was one restitution request made in this case, however, it was

23 withdrawn, so the Government is not seeking restitution, and in

24 paragraph 14 you'll see that there are actually about

25 2900 images and 280 videos that the defendant possessed where

1  the victims have not yet been identified, and I think that's

2  important because the most important part of this case is that

3  these are actual true child victims, these are victims that are

4  being assaulted and raped and brutally abused for the pleasure

5  of this defendant and for his entertainment and because he

6  wanted to do something, quote, unquote, evil, and I think

7  that's important because these victims do live with this abuse

8  for the rest of their lives, and as you see in paragraph 14,

9  there are multiple victims that have not even been identified

10  yet.

11         So, Your Honor, I would ask that you sentence within

12  the guideline range.  I would ask for the top of the guideline

13  range, because I feel like 121 months is sufficient but not

14  greater than necessary for the purpose of the 3553(a) factors.

15  I'll also point out to Your Honor that while the defendant did

16  sign a plea agreement, there was no cooperation, the defendant

17  indicated he did not have cooperation to give, so I have not

18  filed a 5K or sought a 5K motion in this case, and I would ask

19  for a sentence at the top of the guideline range.

20         THE COURT:  All right.  For the defendant?

21         MR. ROSS:  Thank you, Your Honor.

22         I just put up on the screen a mathematical equation,

23  I don't necessarily know if I can actually explain it, but I

24  can tell you that the final answer is 2 squared 2, which equals

25  4.  That's the kind of stuff that's in Mr. Pepke's brain.  He

is affectionally called a nerd.  He can probably quote
Star Trek and Star Wars and comic books and mathematical
equations and have the common decency to make it interesting to
him.

I point that out from the beginning because the way
I look at Mr. Pepke and the way that others may look at
Mr. Pepke is that he's socially awkward.  He's been socially
awkward for a long time.  He's been reared by parents, one
parent who was a drama teacher and another parent who dealt
with electronics and recording of music and some of those odd
things, but they had a very bright child who was kind of a
lonely child, who was kind of kept inside of a box, who did not
have those social graces and the ability to, at times, when you
think of something in your head, not to say it out loud, and
that is directly related and directly reflected in the
presentence report when you hear the language which the
Government talks about where he says to the officers who are
coming there -- you got to remember, this is the first time
Mr. Pepke has ever been arrested.  He says the most odd thing
in the world:  I bet you thought she was bringing this for me.

That is not something which people say who have the
social graces and the normative things which we expect to have
in Mr. Pepke.  I mean, this is something he actually said out
loud.  I wouldn't have said it.  But there's actually no
evidence whatsoever that he's ever touched, thought about,

1   sexually aroused by children.

2          I mean, there's ways in which I could talk to this

3   Court about how this bright man at some point -- who got into

4   MIT and took classes there at some point in his life, that this

5   could have been just a situation of him just trying to

6   understand it, but it's hard when it comes to children, it's

7   hard when it comes to videos involving people.

8          What is sufficient and not greater than necessary for

9   Mr. Pepke, for a person who has never been arrested before in

10  his life, is not 97 to 121 months.  Surely we can get -- and I

11  don't mean we.  Society.  The collective we.  We can get

12  everything by something less than 97 months, something less

13  than 97 months, and it could cover issues of hopefully -- maybe

14  he might be able to teach some classes while he's in the Bureau

15  of Prisons, maybe he might be able to get some treatment that

16  might deal with his mental health, and it's obvious things that

17  he has with mental health, he has bipolar, he has other issues.

18  He also has medical issues that deal with his diabetes and

19  everything else.

20         So what I'm asking this Court to seriously consider

21  is, one, a recommendation to an FMC; two, to allow him to get

22  mental health treatment; three, I think for all the reasons

23  under 3553(a), I believe there are several reasons why he could

24  get a sentence that's lower than 97 months that would be

25  sufficient but not greater than necessary.

1          Also the other thing that Mr. Pepke wants me to

2    explain to this Court is this hasn't been going on since 2002,

3    and he could probably explain it a lot better than I can.

4    He can explain all the addresses that the computer says and the

5    dates and how they're downloaded, but it has not happened since

6    2002, and as the Court well knows, that he did not try to trade

7    in this, and he is 55 years old and he's looking forward to

8    getting on with his life.

9          Thank you.

10          THE COURT:  So you say it hasn't gone on since 2002?

11   What is the thrust of the number 2002?

12          MR. ROSS:  The Government said that he had been

13   downloading since December of 2002.  I believe some of the

14   dates on some of the files may have gone back that far, but

15   based on talking to my client, he had not been downloading

16   since 2002.

17          THE COURT:  Okay.  Well, I'm familiar with the

18   offense conduct as set forth in the presentence report, the

19   defendant's lack of a scorable criminal history, his family

20   background is given to the Court and he has provided

21   information concerning what he describes as a terrible

22   childhood.

23          His health condition is described, his mental health

24   and emotional health are also highlighted.  He has gained very

25   remunerative employment, making in excess of $100,000 a year at

1    his last place of employment as a software architect.

2         I'm familiar with the offense conduct and its

3    guideline scoring, which, there being no dispute, puts the

4    defendant with a total offense level of a 30, so as highlighted

5    in the arguments of counsel, the advice the Court receives is a

6    sentence of between 97 to 121 months.  Of course I'm not bound

7    by that, the Court has a great deal of discretion, but that is

8    the advice I receive.  He could be in custody for up to

9    20 years and he could be supervised for the rest of his life.

10   He's not eligible for probation.  The fine could be as much as

11   a quarter of a million dollars, though the guidelines suggest a

12   range between 15,000 and 150,000.

13        Mr. Pepke, is there anything you want to say?

14        THE DEFENDANT:  The only thing I have to say really

15   is that I'm extremely remorseful about this behavior, which,

16   as my counsel said, has not been going on very long, and will

17   certainly have no desire to do anything like this in the

18   future.

19        THE COURT:  Okay.  Does the Government want to

20   respond further?

21        MS. RANDA:  No, Your Honor.  Thank you.

22        THE COURT:  Have I heard you, Mr. Ross, fully?

23        MR. ROSS:  Yes, Your Honor.

24        THE COURT:  I consider the advice of the guidelines

25   specifically and generally and the factors set forth in

1   18 United States Code Section 3553.  It's my determination that
2   a sentence in the guideline range does accomplish the purposes
3   of sentencing, but I don't believe it's a sentence at the high
4   end of the range as urged by the Government, I think a sentence
5   at the bottom of the range, a sentence of 97 months
6   accomplishes the purposes of sentencing, and that is the
7   Court's sentence.

8           The defendant will be supervised for the rest of his
9   life.  He'll owe a $100 special assessment.  If you break any
10  law, Federal, State or local, if you possess a weapon or drugs
11  illegally, you'll be in violation of the Court's judgment and
12  you could go back to prison with respect to the instant
13  offense.

14          Now, there are a number of other conditions that are
15  highlighted by the probation office.  First and foremost, and I
16  adopt these conditions, you're going to participate in a mental
17  health treatment program, you're going to consent to
18  warrantless searches, cooperate in the collection of DNA,
19  submit to searches of your person, your house, your media
20  devices at any time, with or without a warrant.  You'll submit
21  to a psychosexual evaluation, you'll participate in a
22  sex offender treatment program, you'll submit to physiological
23  testing.

24          You're not going to possess anything that could be
25  described as child pornography or simulated child pornography.

You'll comply with the requirements of the Sex Offender
Registration and Notification Act. You're not going to buy or
possess a computer unless the probation office approves, and
you're not going to use any type of technology that the
probation officer prohibits. You will get searched regularly
by your probation officer or his or her designee, and these
examinations, among other things, may include the removal of
devices from your possession for the purpose of conducting a
thorough inspection.

You'll consent to installation of home monitoring
systems or software that will allow the probation officer to
monitor computer use, and you'll pay the cost of that
monitoring. You won't use or possess or control any
computer-based counterforensic tool that could defeat the
Government's efforts to continue to monitor your progress and
your compliance. You won't have any social networking accounts
without the approval of the probation officer, and you won't be
employed as a volunteer in any activity that involves children
under the age of 18 without written permission from the
probation office, and you can't be engaged in a position that
involves being in a position of trust exercising authority over
any person under the age of 18.

I'm suspending the drug testing condition. There's a
$100 special assessment. I'm not going to impose a fine. You
don't have the ability to pay a fine. Restitution in this case

1   is waived.

2          Mr. Ross, before I impose this finally, are there any

3   other requests or conditions?  I believe you did say a medical

4   facility, and I will recommend that.  I will recommend mental

5   health treatment and I will recommend that the Bureau of

6   Prisons undertake a comprehensive mental health assessment of

7   your client to determine what mental health treatment he may

8   benefit from.  I'll recommend him for further educational and

9   vocational training.  Is there anything further?

10         MR. ROSS:  No, Your Honor.

11         THE COURT:  Anything from the Government?

12         MS. RANDA:  No, Your Honor.  Thank you.

13         THE COURT:  Anything further from you, Mr. Pepke?

14         MR. ROSS:  No, Your Honor.

15         THE COURT:  All right.  Now, you can appeal if you

16  believe there's something very wrong with the sentence or with

17  your conviction, but you do need to move quickly, a defendant

18  usually only has 14 days within which to appeal.  There are

19  waivers in your appeal document, in your documentation, your

20  plea in this case, and these waivers are generally enforceable,

21  but if you believe they're not, you can present your theory to

22  the Court above, but as mentioned, you must move quickly, a

23  defendant usually only has 14 days to do that.

24         Any questions, sir, about the judgment or your appeal

25  rights?

1          THE DEFENDANT:  No, Your Honor.

2          THE COURT:  You'll get credit for time served towards

3    the sentence today.  Thank you.

4          Thank you, Counsel.

5                    - - - - -

6          (Proceedings concluded at 1:47 p.m.)

7                    - - - - -

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

      This is to certify that the foregoing transcript of proceedings taken in a sentencing hearing in the United States District Court is a true and accurate transcript of the proceedings taken by me in machine shorthand and transcribed by computer under my supervision, this the 14th day of July, 2016.


                         /S/ DAVID J. COLLIER


                         DAVID J. COLLIER

                         OFFICIAL COURT REPORTER