THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NORTH CAROLINA

WESTERN DIVISION

No:

| | | |
|---|---|---|
| ERIC MARTIN PEPKE, | ) | MEMORANDUM: SUPPLEMENTAL |
| | ) | |
| Movant, | ) | BRIEF TO MOTION UNDER |
| | ) | |
| vs. | ) | 28 U.S.C. §2255 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | R. Gov. Sec. 2255 Proc. 12 |
| | ) | |
| Respondent | ) | Local Rule 7.3(a), (3) |

TABLE OF CONTENTS

Table of Authorities ............................................ 2
I. Statement of Issues .......................................... 3
II. Facts ....................................................... 3
III. Argument of Law ............................................ 7
　A. Introduction ............................................... 7
　B. Individual Arguments ....................................... 8
　　i. Ground One: Unconstitutionality or Misapplication of Law   8
　　ii. Ground Two: Torture and Written Death Threat ........... 10
　　iii. Ground Three: Ineffective Assistance of Counsel ...... 10
　　iv. Ground Four: Prosecutorial Misconduct ................. 11
　　v. Ground Five: Judicial Misconduct ....................... 12
　　vi. Ground Six: Conflict with Witnessing and Misprision Law 13
　　vii. Ground Seven: Conflict with Intellectual Property Law  14
　　viii. Ground Eight: Denial of Access to the Courts ........ 15
　　ix. Ground Nine: No Miranda Warning ....................... 15
　　x. Ground Ten: Illegal Search and Seizure ................. 15
　　xi. Ground Eleven: Excessive Bail ......................... 16
　　xii. Ground Twelve: Lack of Federal Jurisdiction .......... 16
　　xiii. Ground Thirteen: A Complete Miscarriage of Justice .. 17
Table 1: Comparison of Images ................................... 9

Pro Se
Eric Martin Pepke 59787-056
Federal Correctional Complex
P.O. Box 1000
Petersburg VA 23804

I. Statement of Issues

This brief supplements my (Eric Pepke's) motion to challenge my conviction and sentence under 28 U.S.C. §2255. It sets forth preliminary facts and arguments for the purpose of pleading. The petition refers to the facts in this brief by number; where it summarizes facts, the facts listed in this brief are to be considered definitive.

Nothing in this brief is to be construed as a waiver of my right to present additional facts or arguments in the future, or of any other right.

II. Facts

1. I pled guilty to receipt of one single image, the "pled image," which does not depict nudity, sexual intercourse, bestiality, masturbation, or lascivious exhibition of the genitals or pubic area. I was never shown this image but was able to identify it based on a description I saw briefly during the arraignment hearing. I have been unable to obtain a copy of this description, so I present the following description instead:

> The image depicts a girl around puberty. She is wearing a white bikini with dark spots. The bikini is somewhat large and is not revealing. Her arms are extended over her head. Two thick white ropes lead down from the top of the frame of the image to her hands and wrists. At the end of the ropes there appears to be a horizontal oblong object about eight inches long, perhaps a bar of some sort. The image is not very clear or detailed, so it is not certain whether the ropes are attached to the bar, her wrists, or both. Her expression appears neutral, even bored.

2. During November and December 2015, almost all the time between my federal indictment and my signing the plea agreement, I was detained at Franklin NC jail.

3. The diet at Franklin was insufficient for me to maintain my blood glucose levels as a diabetic, and staff who claimed to lack substantial medical training gave me my required insulin.

4. After I unexpectedly came to consciousness after what I believe was a blood glucose crash, Franklin staff discontinued the medication that had been prescribed to enable me to sleep.

5. Franklin staff confined me to an isolation cell with no opportunity to exercise and bright lights always on, making it impossible to sleep properly. I was awake for three weeks straight.

6. While I was in the isolation cell, staff delivered to me a styrofoam lunch box with what I and my paralegal Patricia Rollins saw as a death threat written on the top. See Exhibit D.

7. Before I was presented with the plea agreement, my trial attorney Joseph Ross II told me it did not matter what the image the government chose for my plea agreement would be.

8. Much later, after I was imprisoned and the deadline for my Anders brief on direct appeal had passed, my appellate attorney Eric Brignac told me it "obviously" did matter.

9. After the starvation, glucose crash, sleep deprivation, death threat, and other problems at Franklin (Facts 2-6) I doubted my own competence. Ross never investigated and appeared furious with me when I brought the matter up on my own initiative at the arraignment hearing.

10. At the end of the sentencing hearing, Ross promised to talk with me later about appeal. I never heard from him again.
11. Despite having the "Dead Man" lunch box top and knowing about the events at Franklin, nobody at the public defender's office mentioned the subject in the context of appeal or any other.
12. Under deadline for direct appeal, I requested an attorney phone call from the prison. The prison did not provide one until 45 days later, when the deadline had long passed.
13. Under deadline for direct appeal, I reported an assault on my person to prison staff. Lt. Davis confined me to the Special Housing Unit (SHU) for weeks in direct contravention of PREA, depriving me of access to legal materials and thus delaying and impoverishing my Anders brief.
14. Under deadline for petition for certiorari, I filed timely by mail a motion to the Supreme Court. More than a week later, the prison returned it, the label blackened as if by heat. (Exhibits E-I) By this time the Supreme Court had denied my petition.
15. The prison did not provide me needed legal materials by interlibrary loan (Exhibit J) or otherwise (Exhibit K).
16. The prison did not provide me as an indigent reproductions of needed material for my petition for certiorari (Exhibit L).
17. At the time of my arrest, the Cary and Garner police had only searched my residence once. Upon information and belief, they did not enter again.
18. At no point before my federal indictment did anybody apprise me of my rights as per Miranda v. Arizona, 384 US 436 (1966).

19. During the search of my residence, one of the detectives admitted to having watched a directory on my computer fill with file names and then empty, long before obtaining a search warrant.

20. When I was jailed at Wake NC jail, bail was set at $2 million. A few days later a few counts of the same charge were added, and bail was increased to $3 million.

21. The government only alleged transfer of data within the state of North Carolina. No interstate transfer was alleged.

22. I was charged under 18 U.S.C. §2252 rather than §2252A. §2252 has a much weaker jurisdictional hook than §2252A.

23. Very little of my criminal discovery was about any charges against me. By far the bulk consisted of prints of public writings of mine, many of which were political and criticized the government especially concerning abuses of police and penal power.

24. The day before a meeting with my trial attorney, Ross, two men identifying themselves as FBI agents Chad Lloyd and Joshua Cribbs came to the jail and interrogated me for a couple of hours. They accused me of being an Islamic terrorist operating out of Lubbock Texas receiving child pornography and exhorting men to behead women with kitchen knives on USENET newsgroups devoted to atheism and Russian nudism.

25. When I told Cribbs and Lloyd that I was Jewish, they became quiet for a moment and then resumed, this time accusing me of **pretending** to be an Islamic terrorist and so forth. By the end they were screaming at me, and I saw a vein throbbing in the neck of one of them.

26. The Forfeiture Allegation on my indictment lists only two items: (a) an HP Mini Netbook Computer which belongs to Angela Monique Jones and (b) a Samsung 120 GB solid-state drive, which is the same make and model as one from a computer I bought for parts and which I had never examined. Notably missing are my computer, a MacBook Air, and the "SIM drive or SD card" the prosecutor alleged contain child pornography, the "Mystery Disk."

I declare under penalty of perjury that all foregoing facts are true and correct.

_____        15 Dec. 2017
Eric Pepke                     Date

III. Argument of Law

A. Introduction

This section presents preliminary arguments of law for every ground. I reserve the right to present additional facts and arguments in the future. Some grounds are not argued yet.

Every ground is appealable. My Memorandum of Plea only waives the right to appeal "excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea." This motion is so based. The plea agreement does not waive my ability to present other grounds in the same motion.

In addtion, some grounds state other reasons the ground may be appealed. The presence or absence of such individual claims does not detract in any way from this reason, which applies regardless.

B.  Individual Arguments

i.  Ground One: Unconstitutionality or Misapplication of Law

No reasonable person would consider the pled image (Fact 1) to be child pornography or depict sexually explicit conduct.

Table 1 shows a comparison of the pled image with two example images: the CapriSun image in Exhibit A, which appeared in the April 2017 issues of Us and Family Fun, and the breast-ironing image in Exhibit B, which appeared in the August 2017 issue of Newsweek. It uses criteria relevant to 18 U.S.C. §2256 and similar laws. It is immediately obvious that the pled image is further removed from what the law prohibits than either example image. Exhibit C shows text from the Newsweek article.

The breast-ironing and CapriSun images cannot be excepted from the law by any means, including perception, New York v. Ferber, 458 US 747, 775 (1982); consideration of the work as a whole, Ashcroft v. Free Speech Coalition, 535 US 234, 238 (2002); redeeming value, id. at 248; motive, US v. Pires, 642 F.3d 1, 11 (1st Cir. 2011); journalism, US v. Matthews, 209 F.3d 338 (4th Cir. 2000); commercial speech, US v. Williams, 535 US 285, 298 (2008); or a lack of willfulness of receipt, US v. Irving, 452 F.3d 110, 121 (2d Cir. 2006).

Either (a) my receipt of the pled image was perfectly legal, or (b) the CapriSun and breast-ironing images are illegal, and everyone involved in their production, distribution, receipt, and possession is a felon, mandated by justice to be punished as I.

This ground entails a claim of actual innocence and so is outside the scope of the appellate waiver. US v. Adams, 814 F.3d 178, 182 (4th Cir. 2016).

Comparison of Images

| Depiction | Pled Image | CapriSun Image | Breast-Ironing Image |
|---|---|---|---|
| Sexual Intercourse | – | – | – |
| Bestiality | – | – | – |
| Masturbation | – | – | – |
| Infliction of Pain | – | – | Fire-heated rock |
| Active Behavior/Conduct | – | Boy taping girl | Pressing hot rock |
| Expression of Subject | Neutral | Smiling | Suffering |
| Bondage | Ropes (?) | Taping | Bound breasts (?) |
| Enjoyment of Humiliation | – | Girl smiling | – |
| Lewdness | – | Boy peeking (?) | Pants down (?) |
| Focus on Pubic Area | – | – | Undergarments (?) |

Legend

-     No such depiction
- (?)     Ambiguous depiction, where reasonable people can disagree

Table 1

ii. Ground Two: Torture and Written Death Threat

Facts 2 through 6 show that I was tortured and threatened with death in writing before I signed the plea agreement, violating my Due Process rights. Were it not for this treatment, there is a substantial chance I would have pled differently.

"Torture" is the appropriate legal term for what the Government did to me. Ashcraft v. Tennessee, 322 US 143, 150 n. 6 (1944).

The least of what the government did, deprivation of the ability to exercise, is still clearly a violation of the Eighth Amendment. Spain v. Procunier, 600 F.2d 189, 194 (9th Cir. 1979). What would be an Eighth Amendment violation after an adjudication of guilt is a violation of Due Process before. Ingraham v. Wright, 430 US 651, 671 n. 90 (1977) and Boring v. Kozakiewicz, 833 F.3d 468, 472 (3d Cir. 1987).

The Fourth Circuit appears tolerant of verbal death threats. Bardes v. Magera, 2009 US Dist. LEXIS 91356 at V. (4th Cir. 2009). It is not clear, however, whether "verbal" includes writing or only the spoken word. Nor is this a "typical" death threat, as it involves labeling an item of food with the threat, suggesting it may be poisoned.

iii. Ground Three: Ineffective Assistance of Counsel

Facts 7 through 11 support this ground. At present, I prefer to let the facts speak for themselves, but I reserve the right to present further facts and argument in the future. Were it not for the ineffective assistance, there is a substantial chance I would have pled differently.

iv. Ground Four: Prosecutorial Misconduct

The prosecutor, Carrie Dean Randa, made many prejudicial but false, irrelevant, impossible, or nonsensical statements at the arraignment and sentencing hearings. Here are only a few:

1. Randa claimed that I had told police where to find a "SIM drive or SD card" in the "kitchen" "separate and apart from the computer," after the police had searched and I had gone to the police station. This is not only false but impossible. If it were true, police would have had to enter a second time fot this "Mystery Disk," and they did not. (Fact 17)

2. Randa claimed I had been downloading since 2002 based on dates in the indictment. This is not only false but nonsensical. No computer-produced date can ever indicate anything about the activity of a computer manufactured after that date. None of my equipment had even been introduced by 2002, and sufficient SD card technology was not even invented until a decade later.

3. Randa claimed that not a single victim in any of the alleged 2,912 still images or 280 videos supposedly on the Mystery Disk had been identified. This is statistically extremely unlikely for an ostensible collection of the claimed size.

4. Randa claimed that abuse was carried out for my entertainment. Neither the purpose nor the perception is relevant to the law. New York v. Ferber, 458 US 747, 775 (1982). The statement sure is inflammatory, though.

This is just the tip of the iceberg. I have chosen these few examples because they are easy to see requiring little to no disputable facts.

v.  Ground Five: Judicial Misconduct

Robert B. Jones, the judge at my arraignment, and Wilkinson, Thacker, and Hamilton, the judges at my appeal, exhibited misconduce, prejudicing my case strongly. This ground is appealable because my plea agreement permits appeal for prosecutorial misconduct, and prosecutors operate in a quasi-judicial capacity. Imbler v. Pachtman, 424 US 409 (1976).

Jones declared me "fully competent," despite serious questions of my competence at the time.

Wilkinson, Thacker, and Hamilton responded to my claim of actual innocence only with, "In his pro se supplemental brief, Pepke asserts that the images to which he pled guilty do not depict child pornography and that the images were 'intrastate.' This claim is belied by the record." US v. Pepke, 662 Fed.Appx. 225, 226 (4th Cir. 2016). This has several problems:

1. I did not plead guilty to receiving "images," only one single image. (Fact 1).

2. I carefully avoided the term "child pornography" in my Anders brief, because (a) §2252 does not use the term to denote illegal images, and (b) the case revolves around what the law actually means, not what terms can be baldly applied. The judges' response amounts to begging the question.

3. Far from the strict scrutiny, US v. Playboy, 529 US 803, 805 (2000), required for laws that are presumptively invalid, id. at 817, these errors are not harmless and indicate the judges gave this issue scarcely even nominal scrutiny.

vi.  Ground Six: Conflict with Witnessing and Misprision Law

Viewing material prohibited by 18 U.S.C. §2252 is considered witnessing a crime. Paroline v. US, 572 US ___ (2014). Failure to report crime, while no longer illegal, is "a badge of irresponsible citizenship." Jenkins v. Anderson, 447 US 231 (1980). The "safe harbor" affirmative defenses of §2252 and §2252A are insufficient to protect witnesses of crimes who chose to report them. 18 U.S.C. §1512 makes it a felony to use or threaten to use force to prevent a witness from reporting a crime with up to 20 years' imprisonment. The enforcement of §2252, therefore, violates §1512 and requires misprision. The laws conflict, and it is up to the courts to decide the proper application of each. Marbury v. Madison, 1 Cranch 137, 177 (1802).

In addition to the general reasons for appealability in A. Introduction, this ground entails a claim of actual innocence and therefore falls outside the scope of the appellate waiver. US v. Adams, 814 F.3d 178, 182 (4th Cir. 2016).

I reserve the right to present further argument in the future.

No facts are required to support this ground, as it consists of entirely legal material, but I reserve the right to introduce facts in the future.

vii. Ground Seven: Conflict with Intellectual Property Law

Since New York v. Ferber, 458 US 747 (1982) and Osborne v. Ohio, 495 US 103 (1990), prohibition of similar material to that prohibited by 18 U.S.C. §2252 has been justified on the assumption that obtaining such material created a market, thus providing financial incentive to abuse children, which the government has a compelling interest to prevent. This may have been a valid assumption at the time, before home computers and even color copiers, when obtaining such material required paying someone to produce it. It may also be valid for purchase from sites such as The Playpen today. However, peer-to-peer communication is considered piracy and is generally believed to destroy, not create markets. If piracy is held to create markets, essentially every law protecting producers of any content from piracy would be invalid. 18 U.S.C. §2252 thus conflicts with a majority of intellectual property law, at least in the context of peer-to-peer and other forms of communication considered piracy.

It is up to the courts to decide the proper operation of each law. Marbury v. Madison, 1 Cranch 137, 177 (1802).

In addition to the general reasons for appealability in A. Introduction, this ground entails a claim of actual innocence and therefore falls outside the scope of the appellate waiver. US v. Adams, 814 F.3d 178, 182 (4th Cir. 2016).

No facts are required beyond the record to support this ground, but I reserve the right to introduce facts and present further argument in the future.

Page 14 of 19

Case 5:15-cr-00319-FL   Document 48-1   Filed 12/21/17   Page 13 of 18

viii. Ground Eight: Denial of Access to the Courts

Facts 12 through 16 support this ground.

I reserve the right to present additional facts and argument in the future.

ix. Ground Nine: No Miranda Warning

Fact 18 supports this ground.

I reserve the right to present additional facts and argument in the future.

x. Ground Ten: Illegal Search and Seizure

Fact 19 supports this ground.

There are also many other questions related to Ground Four. How did the government obtain the Mystery Disk given their story was impossible? Was there a Mystery Disk? How can they claim accurately to know that the alleged 2,912 images and 280 videos really were child pornography? A news report claiming something like that number appeared on television within 48 hours of my arrest. As the government claims that none of the victims had been identified, this suggests that few if any of the alleged images were in the NCMEC database, so they could not have searched by machine and would have had to judge each individually. As we are still arguing about a single image 2½ years later (Ground One), this seems implausible.

I respectfully request that the court declare invalid the provision of my plea agreement preventing me from making inquiries into the investigation. I believe justice mandates that these questions be answered. I reserve the right to raise many other problems with and questions about the search and seizure later.

Page 15 of 19

Case 5:15-cr-00319-FL Document 48-1 Filed 12/21/17 Page 14 of 18

xi. Ground Eleven: Excessive Bail

When I was first jailed in North Carolina, the imposed bail was excessive. The first set of counts of a single charge were for a maximum sentence of seven years, and my attorney said that the sentences would run concurrently for a total of much less. I was impoverished and unemployed without a car or any way to flee. $2 million was not only excessive but absurd.

Fact 20 supports this ground.

I reserve the right to present further argument in the future.

xii. Ground Twelve: Lack of Federal Jurisdiction

I was indicted under 18 U.S.C. §2252, which does not have a strong enough jurisdictional hook to justify federal jurisdiction in my case, as there were no allegations that any image was moved across state lines, let alone by me. (Facts 21 and 22). While §2252A may be strong enough to justify federal jurisdiction, §2255 is not. US v. Baum, 542 Fed.Appx. 724 (10th Cir. 2013). The law in the Fourth Circuit is unclear, but seven circuits have rejected a strong enough jurisdictional hook, US v. Alderman, 593 F.3d 1141 (9th Cir. 2010), including all circuits bordering the Fourth.

No facts beyond the record are presented to support this ground now, but I reserve the right to present additional facts and argument in the future.

xiii. Ground Thirteen: A Complete Miscarriage of Justice.

The cumulative effect of the government's violations in this case is so egregious, its consequences so grave, and the unlawful restraints already imposed on my liberty so severe and inappropriate that justice mandates unconditional discharge with prejudice against retrial.

The government tortured me (Ground Two), persuading me to plead guilty to receiving an image that was not illegal (Ground One). The government claimed this image was on a Mystery disk that could not have been obtained the way the government said (Ground Four) by police who admitted to having conducted an illegal search (Ground Ten). They arrested me without a Miranda warning (Ground Nine), set unconstitutionally high bail (Ground Eleven), and confined me until my federal indictment on a charge too weak to justify jurisdiction (Ground Twelve). The indictment doesn't even mention my computer or the Mystery Disk (Fact 26). The "evidence" in my discovery has almost nothing to do with any actual charges but everything to do with my politics and religion (Fact 23).

This is enough to be a fantastic, incredible, and outrageous story. The government violated more than half of the Bill of Rights for starters, several amendments more than one way. Alone, it would be enough to justify the maximal relief this court can provide. But there's more.

Lloyd and Cribbs (Facts 24 and 25) revealed this story, ludicrous though it is by itself, to be only a small part of a bigger story made entirely of inflammatory invective, hot-

button issues the mere mention of which is guaranteed to drive out any sense, reason, concern for facts, and link with reality.

There's everything. Islamic terrorism! Child pornography! Misogyny! Violence against women! Even Communism, somewhere in all that nude Russian atheism! It would be an unbelievable joke if it weren't deadly serious, as Ground Two shows it to be.

But there's more.

The government piled this on seemingly without the slightest shame that even the most preposterous stream of hurled invective would be stopped or even detected by the judiciary or anyone else. At every stage the government could have taken trivial steps to conceal their machinations. Here are just a few of the most easily accomplished:

1. The government could have trimmed my discovery to make it less obvious that what they were really interested in was my politics.
2. The government could have avoided sending Lloyd and Cribbs to spill the beans about their clearly facticious concoction.
3. The police could have just read me my Miranda rights.
4. The government could have searched me better to prevent me from smuggling the Dead Man box top to a jail where I could give it to my paralegal to copy, or they could have kept the photocopy from me in prison.
5. The government could have indicted me under §2252A with its stronger jurisdictional hook.
6. The prison could have prevented the issues of Us, Family, Fun, and Newsweek from making it into prison.
7. The prison could simply have destroyed my motion to the Supreme Court rather than return it so obviously tampered with.

Page 18 of 19
Case 5:15-cr-00319-FL   Document 48-1   Filed 12/21/17   Page 17 of 18

8. The government could simply not have told a clearly impossible story of how they ostensibly obtained the alleged Mystery Disk.

9. The detectives could not have mentioned their illegal search.

The government could have covered their tracks easily in such a way that neither I nor anybody else would ever have known. Instead, they flaunted their callous disregard for law and justice openly, as if confident they had complete <u>carte</u> <u>blanche</u>.

So far, such an expectation has been entirely borne out. (See Ground Five.) This motion under 28 U.S.C. §2255 is a test of whether their <u>carte</u> <u>blanche</u> has any limit at all.

This is not a case of one or two violations that can be reversed and corrected. The government has violated the majority of the Bill of Rights. The government has acted with blatant, egregious, and callous disregard for justice and utter contempt for the judiciary.

Merely granting a trial <u>de</u> <u>novo</u> or turning back the clock to before the first violation at the federal level is insufficient remedy. I am sure the government would be delighted at another bite of the apple. Three weeks of constant wakefulness, as the government induces, can cause irreversible brain damage. It was mere luck that the government failed to destroy that part of my brain that can file a motion under §2255. Granting them a do-over, a chance to finish the job, is no disincentive at all.

Justice mandates the maximal possible relief the court can provide and then some.

Respectfully submitted this 15 day of December 2017,

_Martin Pepke_                     15 Dec 2017
_____         _____
Eric Martin Pepke                   Date