IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CR-319-FL-1
No. 5:17-CV-631-FL

| | |
|---|---|
| ERIC MARTIN PEPKE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

This matter is before the court on petitioner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, (DE 48), and the government's motion to dismiss, (DE 52). Pursuant to 28 U.S.C. § 636(b)(1)(B), United States Magistrate Judge Kimberly A. Swank entered memorandum and recommendation ("M&R"), (M&R (DE 69)), wherein it is recommended that the court deny petitioner's motion and grant respondent's motion. Petitioner timely filed objections to the M&R, and in this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the M&R, denies petitioner's motion, and grants respondent's motion.

**BACKGROUND**

On January 13, 2016, pursuant to a written plea agreement, petitioner pleaded guilty to one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). The court sentenced petitioner on May 4, 2016, to 97 months' imprisonment and a lifetime of supervised release. Petitioner appealed his sentence to the United States Court of Appeals for the Fourth Circuit. On November 7, 2016, the Fourth Circuit dismissed petitioner's appeal in part and otherwise affirmed

the judgment. United States v. Pepke, 662 F. App'x 225, 226 (4th Cir. 2016). Petitioner then filed a petition for certiorari with the United States Supreme Court, which was denied.

On December 21, 2017, petitioner filed motion to vacate under 28 U.S.C. § 2255, alleging 1) the image at issue regarding his guilty plea was not child pornography, 2) he experienced "torture" and "written death threats" prior to signing his plea agreement, 3) ineffective assistance of counsel, 4) prosecutorial misconduct, where the prosecutor made false and prejudicial statements at petitioner's arraignment and hearing, 5) judicial misconduct, 6) 18 U.S.C. § 2252, of which petitioner was convicted, conflicts with witness intimidation law as set forth at 18 U.S.C. § 1512, 7) 18 U.S.C. § 2252 conflicts with intellectual property law, 8) denial of access to legal materials and the courts, 9) he received no Miranda warning, 10) he was subject to illegal search and seizure, 11) he was held under excessive bail, 12) the court lacked federal jurisdiction, and, in sum, 13) the previous allegations amount to a complete miscarriage of justice.

On January 29, 2018, the government filed its motion to dismiss petitioner's § 2255 motion. On October 31, 2018, the magistrate judge issued M&R, recommending denial of petitioner's motion and grant of the government's motion. On November 26, 2018, petitioner filed objection to the M&R, arguing the magistrate judge erred in that 1) petitioner's plea was not knowing and voluntary and 2) his constitutional challenge to his conviction under 18 U.S.C. § 2252 is not barred by his direct appeal, as well as claiming 3) ineffective assistance of counsel.

**COURT'S DISCUSSION**

A.      Standard of Review

The district court reviews de novo those portions of the M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes

2

only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A petitioner seeking relief pursuant to 28 U.S.C. § 2255 must show that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). "The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions, or the [§ 2255 Rules], may be applied to" § 2255 proceedings. Rules Governing Section 2255 Proceedings, Rule 12.

B.    Analysis

   1.    Knowing and Voluntary Plea

On direct appeal of his conviction and sentence, the Fourth Circuit found that petitioner's guilty plea and plea waivers were knowingly and voluntarily made. Pepke, 662 F. App'x at 226 ("Our review of the record leads us to conclude that Pepke knowingly and voluntarily waived the

3

right to appeal his sentence, except for claims of ineffective assistance or prosecutorial misconduct not known to Pepke at the time of his guilty plea"). Petitioner, once again, argues that his guilty plea was unknowing and involuntary. (See DE 70 at 9-18). However, having unsuccessfully raised this issue on direct appeal, petitioner may not re-litigate it here. See United States v. Walker, 299 Fed.Appx. 273, 276 (4th Cir. 2008) (citing United States v. Roane, 378 F.3d 382, 396 n. 7 (4th Cir. 2004)). Thus, in light of the court of appeals order, this argument is unavailing.

In addition, a review of the plea colloquy reveals that petitioner's plea was both knowing and voluntary. The court may rely on the petitioner's sworn admissions during his Rule 11 hearing when determining whether a plea was knowing and voluntary. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005). "[I]n the absence of extraordinary circumstances . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." Lemaster, 403 F.3d at 221 (citations omitted).

Petitioner and respondent entered into a plea bargain, where respondent agreed to dismiss one count of possession of child pornography and nine counts of receipt of child pornography. (Plea Agreement (DE 22)). In exchange, petitioner agreed to plead guilty to one count of receipt of child pornography and

> To waive knowingly and expressly all rights, conferred by 18 U.S.C. § 3742, to appeal the conviction and whatever sentence is imposed on any ground, including any issues that relate to the establishment of the advisory Guideline range, reserving only the right to appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing, and further to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea.

4

(DE 22 at 1).

At arraignment, petitioner was placed under oath. In response to the magistrate judge's inquiry as to petitioner's medical and physical condition, petitioner explained at length his bipolar disorder and diabetes, his inability to sleep, medication taken for sleeplessness while in custody as well as insulin taken, how his sleep medication was discontinued, and how his "mania is in the process of returning, it is significantly returned." (DE 39 at 12).

The following exchange then occurred:

> THE COURT: All right. Is there anything about your past diagnoses, current condition, prior medications, current medications or current conditions that would make you believe you're unable to understand what's going on this morning?
> THE DEFENDANT: I do not believe there's anything that makes me unable to understand this morning. There are things that make me unable to understand at various other times, and also, Your Honor, I face the problem of if I can't understand, it's very difficult for me to tell.
> THE COURT: Well, that kind of puts me in an awkward position.
> THE DEFENDANT: I know, Your Honor.
> THE COURT: How am I supposed to know that you know what's going on this morning?
> THE DEFENDANT: All I can say is that I believe I do.
> THE COURT: Okay. Mr. Ross, do you have any reservations about going forward this morning?
> MR. ROSS: I do not and cannot add anything else.
> THE COURT: All right. Well, Mr. Pepke, let me ask you this: Do you think that if I ask you directly whether you understand what's going on this morning, do you believe that you could give me an honest and accurate answer?
> THE DEFENDANT: Yes, Your Honor.

(Id. at 13).

The magistrate judge thereafter inquired whether petitioner had discussed his charges and case with his attorney, if he understood the charges, if he understood what was happening in court that morning, if he had discussed his case with his attorney, if he was satisfied with his attorney's advice and counsel, if he heard and understood previous explanation of petitioner's rights provided

5

earlier, if he understood the magistrate judge's general explanation regarding sentencing, if he understood what charges were pending, if he understood the charges that had been filed against him as well as the maximum punishment petitioner faced if convicted, if petitioner had signed the plea agreement, and if prior to that petitioner discussed the plea agreement with his attorney. In response to each of these questions, petitioner answered clearly in the affirmative.

The magistrate judge then addressed petitioner's understanding of the plea agreement more fully in the following exchange:

> THE COURT: Did you understand the terms, the language, the words, the sentences, even any legal phrases that are used in this plea agreement after you discussed it with Mr. Ross?
> THE DEFENDANT: I did, Your Honor.
> THE COURT: Do you understand that by entering into this plea agreement and entering a plea of guilty, that you will have waived or given up your right to appeal or to collaterally attack all or a part of your sentence?
> THE DEFENDANT: I understand something like that, but not quite that. I understand that I give up my right to appeal if it's – unless it's greater than the guidelines.
> THE COURT: Well, there's a paragraph on – do you have a copy of the plea agreement there at counsel table?
> THE DEFENDANT: Okay.
> THE COURT: Do you see on page 1 and on page 2, paragraph C, that it goes over from page 1 to page 2?
> THE DEFENDANT: I understand, Your Honor.
> THE COURT: Do you understand the contents of that paragraph?
> THE DEFENDANT: Yes, Your Honor.

(Id. at 19).[1]

Finally, the magistrate judge inquired as to whether anyone had made promises different than those found in the plea agreement in order to influence petitioner's plea or if any had "threatened

---

[1] The paragraph discussed from the plea agreement is the paragraph quoted above in which petitioner "waive[d] knowingly and expressly all rights . . . to appeal the conviction and whatever sentence is imposed on any ground" excepting "an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea." (DE 22 at 1).

6

you in any way to persuade you to either accept this plea agreement or to plead guilty in this case." (Id. at 20). Petitioner responded clearly in the negative, again confirming that he was "pleading guilty of [his] own free will because [he] in fact [is] guilt. (Id.).

Petitioner confirms all statements made by him at Rule 11 colloquy were "scrupulously truthful" and petitioner is "happy to be bound by his statements," but denies that, based on these statements, petitioner's plea was knowing and voluntary. (See DE 70 at 9). Petitioner maintains his plea was a product of torture, although not coerced in that he is not arguing anyone sought to influence his plea,[2] that he was intimidated by counsel and the magistrate judge and not provided sufficient information, that it was clear to counsel and the magistrate judge that he was not sleeping while detained, and that his plea was not knowing due to his "faulty understanding of the very meaning of pleading guilty," apparently arguing he committed the act for which he pleaded but not did intend to plead the act itself was illegal. (Id. at 10, 18).

Petitioner's arguments are wholly inconsistent with petitioner's repeated representations at Rule 11 hearing. Petitioner's sworn statements at his Rule 11 hearing repeatedly confirmed his ability to understand the proceedings as well as his actual understanding of the proceedings, his knowledge of the terms of the plea agreement, his discussions with his attorney, and his admission

---

[2] Petitioner alleges while being detained prior to entering into plea agreement that the following occurred:

> The diet at Franklin was insufficient for me to maintain my blood glucose levels as a diabetic, and staff who claimed to lack substantial medical training gave me my required insulin. After I unexpectedly came to consciousness after what I believe was a blood glucose crash, Franklin staff discontinued the medication that had been prescribed to enable me to sleep. Franklin staff confined me to an isolation cell with no opportunity to exercise and bright lights always on, making it impossible to sleep properly. I was awake for over 500 hours. While I was in the isolation cell, staff delivered to me lunch in a styrofoam clamshell box with what I saw as a death threat in Majik Marker on the top.

(DE 68 at 4).

of guilt as to one count of receipt of child pornography, thus rendering "palpably incredible" his current claim that his plea was not knowing and voluntary. Petitioner's present arguments that his plea was not knowing and voluntary fails and shall be dismissed.[3]

2.      Challenge to Conviction under 18 U.S.C. § 2252

Petitioner argues 18 U.S.C. § 2252 is unconstitutional and that under this statute, "[n]o reasonable persons would consider the [image at issue in this case] to be child pornography or depict sexually explicit conduct." (DE 48-1 at 7; DE 70 at 3-6). Petitioner objects to the magistrate judge's recommendation that this claim is barred by the Fourth Circuit's holding regarding his conviction on direct appeal. More specifically, petitioner argues the Fourth Circuit did not "fully consider" this challenge nor did the Fourth Circuit address the constitutionality of the relevant statute. (See DE 70 at 3-6).[4]

The Fourth Circuit fully considered the issue as to whether the image at issue was child pornography. On appeal, the Fourth Circuit held as follows: "In his pro se supplemental brief, Pepke asserts that the images to which he pled guilty do not depict child pornography and that the images were 'intrastate.' This claim is belied by the record." Pepke, 662 F. App'x at 226.

This claim, raised on direct appeal, may not be relitigated on collateral review. The Fourth Circuit's address of petitioner's claim is sufficient. As stated by the Fourth Circuit:

> There is no requirement that a court specifically discuss every issue raised by an appellant . . . . Dyess raised Apprendi in his direct appeal, we noted that he had made the argument to the district court, and we affirmed his conviction and sentence

---

[3] Although petitioner argues exceptional circumstances permit relitigation in this case, (see DE 70 at 6); the court finds no such exceptional circumstances are alleged or present.

[4] Petitioner takes issue with the Fourth Circuit's use of the phrase "child pornography," which petitioner argues he did not use, and the use of "images," in the plural, where petitioner's guilty plea only concerned one image. (DE 70 at 5). Petitioner's arguments do not impact the current analysis.

8

in all respects. Nothing more is required. To the extent Dyess believes we overlooked his argument, the remedy was to file a petition for rehearing or—as Dyess unsuccessfully did—seek a writ of certiorari to the Supreme Court, not to file a § 2255 motion.

United States v. Dyess, 730 F.3d 354, 360 n.5 (4th Cir. 2013).

To the extent this claim was not raised on direct appeal, petitioner waived his right to bring such an argument in his plea agreement. As previously stated, the Fourth Circuit held that defendant "knowingly and voluntarily waived the right to appeal his sentence, except for claims of ineffective assistance or prosecutorial misconduct not known to Pepke at the time of his guilty plea." Pepke, 662 F. App'x at 226. Petitioner's instant claim is not one of ineffective assistance or prosecutorial misconduct not known to him at the time of his guilty plea.[5]

3.  Ineffective Assistance of Counsel

Analysis of an ineffective assistance of counsel claim requires application of the two-part test established by Strickland v. Washington, 466 U.S. 668, 690-94 (1984). First, the petitioner must show that his counsel's performance was deficient in that it fell below the standard of reasonably effective assistance. Id. at 687-691. Second, the petitioner must show that there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. Id. at 694. The Sixth Amendment provides a criminal defendant with the right to competent counsel that "extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162 (2012).

Petitioner argues his attorney at arraignment was ineffective because he refused to tell petitioner "what he would be asked to plead guilty to" and was hostile in response to petitioner's efforts to learn more about the charge at issue. (DE 70 at 19). Essentially, petitioner is alleging

---

[5] Additionally, although Petitioner's constitutional challenge to the statute at issue is not wholly clear, as noted by the Seventh Circuit, "the Supreme Court has rejected constitutional challenges to § 2252(a)." United States v. Muick, 167 F.3d 1162, 1167 (7th Cir. 1999) (citing United States v. X–Citement Video, Inc., 513 U.S. 64 (1994)).

again that he neither understood what was said to him at the Rule 11 hearing, nor understood what he was agreeing to by entering a guilty plea. However, as stated above, petitioner made no indication of such confusion at his Rule 11 hearing despite being offered ample opportunity to do so. As reviewed in detail above, petitioner's repeated sworn statements during the Rule 11 hearing indicated that he understood the charges and that he knowingly and voluntarily admitted his guilt.

Petitioner additionally argues that his attorneys at both the trial and appellate levels were ineffective in that petitioner was "virtually abandon[ed]" between sentencing and appeal, depriving petitioner of "continuous representation" and preventing petitioner from planning a better appellate brief, "thus resulting in procedural defaults." (Id.). However, petitioner was able to file multiple appellate briefs, all of which were considered on appeal. As stated by the Fourth Circuit, "Pepke's attorney has filed a brief . . . [and] Pepke filed a pro se supplemental brief, with a supplement." Pepke, 662 F. App'x at 226. Petitioner offers no allegation or argument that either trial or appellate counsel's performance was deficient in that it fell below the standard of reasonably effective assistance in the transition period nor that there is a reasonable probability that had petitioner had more access to counsel during this transition period, the result of his appeal would have been different.

Finally, petitioner argues that his competency to proceed at arraignment was in question, appearing to indicate that the magistrate judge and petitioner's counsel erred by not further investigating petitioner's competence. (See DE 70 at 15-16).[6] Petitioner does not argue he was incompetent to proceed, only that "he doubted his competence" at the time, warranting further investigation. (Id. at 15).

---

[6] Although not clear, it appears petitioner argues that his competency was evaluated at some point prior to arraignment, and petitioner was found competent. (Id. at 15).

10

"In order to obtain relief on a claim for failure to investigate a petitioner's mental competency, a petitioner must demonstrate a reasonable probability that he was mentally incompetent at the time of the crime or his plea." Garrett v. United States, No. 5:08-CR-175-FL, 2013 WL 1694671, at *2 (E.D.N.C. Apr. 18, 2013); see also Felde v. Butler, 817 F.2d 281, 281 (5th Cir. 1987). For example, in Warford v. United States, No. 7:11-CR-136-FL, 2014 WL 793319 (E.D.N.C. Feb. 26, 2014), the court considered a petitioner's objection "that he is mentally ill and has an I.Q. level below 55, and therefore was not mentally capable of entering into a knowing and voluntary plea agreement." Id. at *4. In that case, the court found the petitioner's argument was "flatly contradicted by petitioner's statements at arraignment . . . . . [where] the court asked petitioner numerous questions . . . and carefully confirmed his ability to understand the proceedings." Id.; see also Lewis v. United States, No. 4:12-CR-68-FL-2, 2015 WL 2401514, at *6 (E.D.N.C. May 20, 2015) ("Petitioner's claim that he was not competent to proceed, and that his counsel should have investigated further his competency, is belied by petitioner's statements regarding his ability to communicate and understand on the date of the arraignment."). Here, too, petitioner's argument that he may not have been competent to proceed is belied by his statements at arraignment, reviewed above.[7]

4. Certificate of Appealability

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner must demonstrate that reasonable

---

[7] Petitioner's argument that he was denied "access to courts" is unclear; petitioner alleges he has initiated a lawsuit concerning legal mail he alleges was never delivered and that petitioner was unable to communicate with his attorney without risk of monitoring. (DE 70 at 20). As stated by the magistrate judge, and not specifically objected to by petitioner, "Petitioner's allegations [regarding this claim]. . . do not support vacatur of Petitioner's conviction or sentence and therefore fail to state a claim cognizable under § 2255." (M&R (DE 69) at 10).

jurists could debate whether the issues presented should have been decided differently or that they are adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000). After reviewing the claims presented on collateral review in light of the applicable standard, the court finds that a certificate of appealability is not warranted.

## CONCLUSION

For the foregoing reasons, the court ADOPTS the recommendation of the M&R. The government's motion to dismiss (DE 52) is GRANTED, and petitioner's motion to vacate, set aside, or correct his sentence (DE 48) is DENIED. A certificate of appealability is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 24th day of May, 2019.

LOUISE W. FLANAGAN
United States District Judge